IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

**MICHAEL AND TABITHA COX, individually
and on behalf of their minor child, W.C.,**

    **Plaintiffs,**

v.                                             **CIVIL ACTION NO. 1:17-04610**

**AIR METHODS CORPORATION and ROCKY
MOUNTAIN HOLDINGS, LLC,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the court is (1) Plaintiffs' Amended Motion to Remand (ECF No. 12) and (2) Defendants' Motion to Transfer or Stay (ECF No. 6). For the reasons that follow, the court denies plaintiffs' motion to remand and stays this matter pending the dispositive motion to dismiss currently before the United States District Court for the District of Colorado in Scarlett v. Air Methods Corporation, et al.

### I. BACKGROUND

**A. Factual History**

On August 18, 2017, plaintiffs filed a putative class action against defendants, Air Methods Corporation and its holding company, Rocky Mountain Holdings, LLC (collectively "Defendants"). Defendants provide air ambulance services in West Virginia and other states. Plaintiffs' child W.C. was hospitalized at Princeton Community Hospital in Princeton, West

Virginia and required air transportation to CAMC Women's and Children's Hospital in Charleston, West Virginia. Complaint at ¶ 14. Defendants transported W.C. the necessary 76 rotor miles. Id. at ¶¶ 14-16. No written contract or verbal agreement memorialized these services. Id. at ¶ 15.

Plaintiffs received a bill for $52,634.76 from Defendants. Id. at ¶ 16. Plaintiffs' insurer, West Virginia Public Employee Insurance Agency ("PEIA") paid Defendants $6,704.14. Id. at ¶ 17. PEIA also concluded that plaintiffs would be responsible to pay $586.79. Id. Nevertheless, plaintiffs received a bill from Defendants for $45,930.62, the amount unpaid by PEIA. Id. at ¶¶ 17-18. When Defendants requested additional payment from PEIA, the insurer refused, stating in a May 6, 2016 letter that the additional $45,930.62 "is clearly excessive." See ECF 1-1, Ex. B. These excessive charges form the foundation for plaintiffs' claims: that Defendants actions constitute a breach of West Virginia implied contract law. Complaint at ¶¶ 36-41.

Plaintiffs' claims are on behalf of themselves and other similarly situated West Virginians who have used Defendants' transportation services. Id. at ¶ 40. Plaintiffs define the proposed class as:

> All patients who, without entering a written agreement
> with Defendants for medical transport prior to the
> transport, received medical transport by Defendants
> from a location in West Virginia to a healthcare

2

>facility during the period of five (5) years prior to
>the commencement of this action.

Id. at ¶ 27. The Complaint alleges "[u]pon information, the proposed class would include hundreds, if not thousands of class members." Id. at ¶¶ 27-28. The action seeks damages for any overpayments collected by Defendants. In the alternative, plaintiffs request that the court enjoin Defendants from charging and collecting unreasonable rates. Id. at ¶¶ 36-51.

**B. Procedural History**

Plaintiffs originally filed their action in the Circuit Court of Mercer County, West Virginia on August 18, 2017. Id. Defendants removed the action to federal court on December 22, 2017, citing the removal requirements under the Class Action Fairness Act of 2005 ("CAFA") and traditional diversity jurisdiction. See ECF No. 1. Soon thereafter, Defendants filed a Motion to Transfer or Stay, seeking to either transfer this action to the United States District Court for the District of Colorado or stay the action until that court makes a ruling on a pending motion to dismiss. ECF No. 6. On January 22, 2018, plaintiffs filed a motion to remand the action to the Circuit Court of Mercer County. ECF No. 10. On the same date, plaintiffs filed the operative Amended Motion to Remand.[1] See

---

[1] Accordingly, Plaintiffs' Motion to Remand Case to Circuit Court of Mercer County is **DENIED** as moot. Id.

3

ECF No. 12. Each motion has been fully briefed.[2] The court first reviews the jurisdictional issues raised in plaintiffs' Amended Motion to Remand and then proceeds to Defendants' Motion to Transfer or Stay.

## II. PLAINTIFFS' AMENDED MOTION TO REMAND

Plaintiffs' amended motion to remand claims Defendants have offered insufficient evidence to establish that this action meets CAFA's jurisdictional threshold of at least 100 class members and $5,000,000 amount in controversy. ECF No. 13 at pp. 2-6. Id. The court disagrees and **DENIES** plaintiff's motion.

### A. Applicable Law

A defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction. . . ." 28 U.S.C. § 1441(a). Under CAFA, an action may be originally brought in federal court if it has (1) at least one member of the class who is a citizen of a state different than at least one of the defendants; (2) the class consists of at least one hundred members; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). To properly remove an action under CAFA, a defendant must file a

---

[2] Plaintiffs' unopposed motion seeking to extend the deadline to respond to the Motion to Transfer or Stay is **GRANTED**. ECF No. 9.

4

notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); see also Strawn v. AT&T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008)

While defendant bears the burden of alleging federal jurisdiction under CAFA, Strawn, 530 F.3d at 297, there is "no antiremoval presumption attend[ing] cases invoking CAFA . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Op. Co. v. Owens, -- U.S. --, 135 S. Ct. 547, 554 (2014). If jurisdiction is challenged, the parties are required to submit proof and the court must determine if federal jurisdiction under CAFA has been met by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B); Dart, 135 S. Ct. at 553-54.

The parties agree that CAFA's minimal diversity requirement is met. Therefore, the court assesses whether Defendants have demonstrated by a preponderance of the evidence the numerosity and amount in controversy requirements.

**B. Discussion**

Defendants' notice of removal relies on plaintiffs' own representations within the Complaint. The Complaint states that the proposed class "include[s] hundreds, if not thousands of members." Complaint at ¶ 28. Defendants assert that the plural "hundreds" exceeds the 100-person class numerosity threshold.

5

Therefore, if "hundreds" means 200 class members, and each member was overcharged $45,930.62 (the alleged overcharge of representative plaintiffs), the requested damages would total $9,186,124, exceeding the $5,000,000 amount in controversy. See ECF No. 1 at pp. 5-6. Defendants also argue that the injunctive relief requested by plaintiffs would exceed $5,000,000. Id.

Plaintiffs contend that this "methodology" fails to establish jurisdiction under CAFA. While the court is prone to believe that Defendants' notice of removal meets its obligation under Dart, 135 S. Ct. at 551, Defendants' Response removes all doubt. See ECF No. 19. The Response attaches the affidavit of Paul Webster, Vice President of Policy and Health Economics for Air Methods.[3] See ECF No. 19-1. The Webster affidavit asserts in the previous five (5) years from the August 18, 2017 date of suit,[4] Defendants have "provided emergency ambulance transport from locations in West Virginia to healthcare facilities for more than 1,600 patients without entering in a written agreement for the transport." Id. at ¶ 3. The total charged for these 1,600 transportations exceeds $70 million. Id. at ¶ 4.

---

[3] The affidavit may be used under Dart, which rejected the argument that a legally deficient notice of removal "could not be cured by post-removal evidence about the amount in controversy." 135 S. Ct. at 552 (internal quotations omitted).

[4] Consistent with the proposed class as defined in the Complaint.

6

The Webster affidavit puts to rest any question as to whether plaintiffs' defined class meets the numerosity and amount in controversy thresholds of CAFA.[5] While plaintiffs could argue that the affidavit is over-inclusive as to the amount in controversy (they do not), $70 million far surpasses $5 million. Accordingly, Defendants' removal is proper under CAFA, 28 U.S.C. § 1332(d), and plaintiffs' motion to remand is **DENIED**.

### III. DEFENDANTS' MOTION TO TRANSFER OR STAY

Defendants contend that this action was filed nine (9) months after another putative nationwide class action involving the same parties, same issues, and same claims was filed in the United States District Court for the District of Colorado, Scarlett v. Air Methods Corp., Case No. 1:16-CV-02723 ("Colorado Action"). ECF No. 6. To date, six related class actions have been consolidated in the District of Colorado either by joint agreements or through judicial consolidation. See ECF No. 6-9 (consolidating actions involving proposed nationwide classes and statewide classes from Oklahoma, South Carolina, Alabama,

---

[5] The Webster affidavit also declares that the financial harm to Defendants would exceed $5 million if plaintiffs were awarded their proposed injunctive relief, providing another for meeting the amount in controversy threshold. See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

Florida, Georgia, Mississippi, and Tennessee).  An additional action, filed in the Northern District of Ohio ("Ohio Action")[6] has been stayed until a pending motion to dismiss is ruled upon in the Colorado Action.  This motion to dismiss in the Colorado Action is grounded upon preemption by the Airline Deregulation Act, 9 U.S.C. § 40101, et seq., also applicable to this action.  Moreover, this motion has been fully briefed by the parties and oral argument had been held.  Finally, Defendants state that the nationwide class in the Colorado Action[7] encompasses this proposed class, which includes only West Virginians.

   **A. Applicable Law**

The first-to-file rule favors judicial comity by attempting to avoid duplicative litigation and conserve judicial resources. Under the first-to-file rule, "the first suit should have priority, absent the showing of balance of convenience in favor

---

[6] See ECF No. 6-2, Byler, et al. v. Air Methods Corp., et al., No. 1:17-CV-00236, (N.D. Ohio Aug. 30, 2017) (staying under first-to-file doctrine).

[7] The consolidated complaint states its proposed nationwide class consists of:

> All persons, or legal representatives of persons, who were charged for, or who have been billed for, air medical transport by Defendants from or to locations within the United States without having entered into a written agreement with a price specified for that medical transport during the relevant statute of limitations period.

ECF No. 6-9 at ¶ 219.

8

of the second action." Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n. 2 (4th Cir. 1974) (internal quotations marks and citation omitted); Allied-General Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 n. 1 (4th Cir. 1982) ("Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed."). "Procedurally, the court first considers whether the two competing actions are substantively the same or sufficiently similar to come within the ambit of the first-to-file rule. If they do, the court then considers whether any exception to the rule should be applied." Harris v. McDonnell, No. 5:13CV00077, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013)

While the Fourth Circuit "has no unyielding 'first-to-file' rule," CACI Intern., Inc. v. Pentagen Technologies Int'l., 1995 WL 679952, at *6 (4th Cir. 1995) (unpublished), the Sixth Circuit in Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016), recently held:

> [C]ourts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake. If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of inequitable conduct, bad faith, anticipatory suits, or forum shopping, merit not applying the first-to-file rule in a particular case.

9

(citations, quotations, and emphasis omitted). This same test has been applied in districts in our circuit. See Harris, supra at *3 (applying same three-factor test); Scardino v. Elec. Health Res., LLC, No. 2:14-CV-2900-PMD, 2016 WL 1321147, at *2 (D.S.C. Apr. 5, 2016) (same).

"When a case falls within the ambit of the [first-to-file] rule, district courts generally stay or dismiss the later-filed case." Moore's Elec. & Mech. Const., Inc. v. SIS, LLC, No. 6:15-CV-00021, 2015 WL 6159473, at *3 (W.D. Va. Oct. 20, 2015); see also Ohio Sec. Ins. Co. v. K R Enterprises, Inc., No. CV 1:15-16264, 2017 WL 6390944, at *4 (S.D.W. Va. Dec. 14, 2017) ("Under the first-to-file rule, a district court may, in its discretion, dismiss, stay, or transfer a later filed lawsuit in deference to the first-filed action.").

**B. Discussion**

While neither of the parties adapts their arguments to factors enumerated above, the parties' substantive disagreement flows from whether or not this action is sufficiently similar to the Colorado Action. The first factor, the chronology of events, favors Defendants because this action was filed after each of the actions now consolidated in the Colorado Action.

**1. Similarities of the Parties Involved**

Plaintiffs contend that its action should not be transferred, and thereby joined into the Colorado Action,

10

because the putative class has yet to be certified.  ECF No. 17 at p.4.  But class certification is not a consideration under the first-to-file rule because the court's role is merely to consider "whether there is substantial overlap with the putative class even though the class has not yet been certified."  Baatz, 814 F.3d at 790 (collecting cases).  On the contrary, a court in our circuit concluded the first-to-file rule is "particularly appropriate," in a pre-class certification context, as it avoids "multiple attempts at certification in two different courts."  Ortiz v. Panera Bread Co., No. 1:10CV1424, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011).  Here, the proposed class in the Colorado Action encompasses the instant proposed class of West Virginians.  This factor favors Defendants and application of the first-to-file rule.

## 2. Similarities of the Issues or Claims at Stake

A review of plaintiffs' factual and legal claims demonstrates that not only is there substantial overlap between the issues and claims in this action and the Colorado Action but that each complaint is almost a verbatim recitation.  Compare ECF No 1-1, with ECF Nos. 6-1, 6-6, 6-7, 6-8. The only difference involves who is included in the different proposed classes.

Plaintiffs argue (as did the plaintiffs in the Ohio Action), that sufficient similarity does not exist because their

11

claims rely on the implied contract law of West Virginia. Compare ECF No 17 at pp. 6-8, with ECF No. 6-2 at p.6.  The court finds little merit in this assertion because the legal issues and underlying factual claims are exactly the same.  See Allied-General Nuclear Servs., 675 F.2d at 611 n. 1. Accordingly, the court finds that each factor favors Defendants and that the first-to-file rule is applicable.

### 3. Equitable Considerations

Since the first-to-file rule is applicable, the court reviews whether equitable considerations warrant retaining jurisdiction.  In doing so, the court considers the factors for deciding a motion to transfer enumerated in 28 U.S.C § 1404(a), which include: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." Harris, supra, at *5, citing Cross v. Fleet Reserve Ass'n Pension Plan, 383 F. Supp. 2d 852, 856 (D. Md. 2005).

Plaintiffs argue that it is unfair to litigate this matter in the far-off jurisdiction of Colorado.  They allege the Complaint is rooted in West Virginia contract law and that transfer effectively deprives plaintiffs of their counsel because only attorneys licensed in Colorado would be capable of litigating the matter.

While "plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate," Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1256 (E.D. Va. 1988), the court finds that this fails to overcome the court's interest in uniformity. Moreover, requiring this court and the District Court of Colorado to proceed separately in the same task of determining whether plaintiffs' claims are preempted by federal law, especially when this issue has been heard in the Colorado Action, would prove the "epitome of judicial waste." Charlotte-Mecklenburg Hosp. Auth. v. Facility Wizard Software, Inc., No. 3:08-CV-00463-FDW, 2008 WL 5115281, at *1 (W.D.N.C. Dec. 4, 2008); see also United States v. Brick, 846 F.2d 74 (4th Cir. 1988) ("The purpose of the rule is to 'promote efficient use of judicial resources' and it 'should be applied in a manner serving sound judicial administration.'") (quoting Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985)).

### C. A Stay Is a Suitable Alternative to Transfer or Dismissal

Because this case is within the ambit of the first-to-file rule, the court in its discretion must determine whether transfer, stay, or dismissal of this action would best serve the interests of justice. Akin to the Ohio Action, this court finds

that a temporary stay, rather than transfer or dismissal, is appropriate. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). A single dispositive issue—whether plaintiffs' claims are preempted by the Airline Deregulation Act—is being considered in the Colorado Action. Moore's Elec. & Mech. Const., Inc. v. SIS, LLC, No. 6:15-CV-00021, 2015 WL 6159473, at *7 (W.D. Va. Oct. 20, 2015) (finding the first-to-file rule applies and staying case pending determination of a motion to dismiss pending before another district court). While duplicitous briefing on this issue of federal law would prove unnecessary and could result in a lack of uniformity if plaintiffs survive this challenge, the case is grounded in West Virginia contract law and would require the testimony of West Virginia witnesses. Accordingly, this court believes that the proper disposition for this case is to defer to the Colorado Action and proceed after a ruling on the motion to dismiss pending in Colorado.

## IV. CONCLUSION

For the reasons above, the Plaintiffs' Amended Motion to Remand (ECF No. 12) is **DENIED**. Defendants' motion to transfer or stay (ECF No. 6) is **GRANTED** as to Defendants' motion to stay and

14

**DENIED** as to Defendants' motion to transfer.  The parties shall file a joint status report regarding the status of the Colorado Action within 60 days of the entry of this Memorandum Opinion and Order and shall do so every 60 days thereafter.

The Clerk is further **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 30th day of May, 2018.

Enter:

/s/ David A. Faber
David A. Faber
Senior United States District Judge